# SUSIE M. ALFORD v. NEW YORK LIFE INSURANCE COMPANY, Appellant.

### Division One, December 1, 1919.

1. **INSURANCE: Governed by Laws When Policy Was Issued.** The laws in force at the time the life insurance policy was issued determines the beneficiary's right to recover.

2. ———: **Right to Paid-up Policy: Definition of Word Entitled.** The word "entitled" is susceptible of more than one meaning. It may be used to mean that a right or title is given or is vested; or that one is furnished with grounds for seeking or claiming with success. In the proviso to the Act of 1895 amending Section 5859, Revised Statutes 1889, where it is stated that "in all instances where three annual premiums shall have been paid on a policy of insurance, the holder of such policy shall be entitled to paid-up insurance, the net value of which shall be equal to that provided in Section 5856," the word "entitled" means that the holder of such policy had the right to claim or demand paid-up insurance, if he desired to do so, in any case in which he had contracted otherwise in his policy, but it did not require him to accept paid-up insurance without such election.

3. ———: ———: **Contract According to Laws of Another State.** The proviso contained in the amendment of 1895 to Section 5859, Revised Statutes 1889, did not automatically convert a policy made in accordance with the laws of New York and which contained an agreement for extended insurance in case of default in the payment of the fourth annual premium, into a paid-up policy for a definite proportion of the amount of the insurance, where the holder, after such default, did not elect to take such paid-up policy.

Appeal from Pike Circuit Court.—*Hon. Edgar B. Wool-folk*, Judge.

REVERSED.

*Jones, Hocker, Sullivan & Angert, Hostetter & Haley* and *James C. Jones, Jr.*, for appellant; *James H. McIntosh* of counsel.

The proviso to the Act of 1895 does not provide for automatic paid-up insurance in case of lapse, and without demand, because (1) The title to the act indicates that it was passed for a different purpose than to repeal Sections 5856 and 5857, R. S. 1889. Straughan v. Myers, 268 Mo. 588. (2) Its language as a whole shows a contrary intention. Nichols v. Ins. Co., 176 Mo. 378. (3) The terms of the statute it displaced show a contrary intention. R. S. 1889, sec. 5859. (4) The subsequent amendment of the Act of 1895 shows that it was not intended to repeal Section 5856 or Section 5857. R. S. 1899, sec. 7900. (5) Repeals by implication are not favored. Nichols v. Hobbs, 197 S. W. 259; State ex rel. v. Stratton, 136 Mo. 429; State ex inf. v. Amick, 247 Mo. 289. (6) If this enactment is interpreted as repealing either Section 5856 or Section 5857, then it falls within the ban of Sec. 28, Art. 4, Missouri Constitution, because no such subject is expressed in the title to the act. St. Louis v. Wetzel, 130 Mo. 616; State v. Tea Company, 171 Mo. 642; St. Louis v. Wortman, 213 Mo. 139; State v. Rawlings, 232 Mo. 557; Williams v. Railroad, 233 Mo. 677; Hardward Co. v. Fisher, 269 Mo. 278. (7) If the Act of 1895 applies at all to the right to paid-up insurance, then it is *in pari materia* with Section 5857 and the two must be read and applied together. Macke v. Byrd, 131 Mo. 690; State ex inf. v. Koeln, 270 Mo. 191. (8) If the act is interpreted as requiring automatic paid-up insurance without demand, and as not repealing Section 5856, then it is void, because it takes the property of the company without due process of law and denies it the equal protection of the

law. Sec. 30, Art. 2, Missouri Constitution; Sec. 1, Art. 14, United States Constitution. (9) A statute will never be interpreted so as to make it unconstitutional, if any other interpretation is at all possible. Straughan v. Myers, 268 Mo. 588; State ex rel. v. Mason, 153 Mo. 49; State ex inf. v. Koeln, 170 Mo. 188. (10) Nor will a statute be interpreted so as to produce unjust-results. Perry v. Strawbridge, 209 Mo. 645; Gist v. Constr. Co., 224 Mo. 379; Rutter v. Carothers, 223 Mo. 643.

*J. S. Fitzgerrell* and *Wm. A. Dudley* for respondent.

(1) The policy in this case was a Missouri contract and controlled by Missouri laws. R. S. 1889, sec. 5856; Laws 1895, p. 197, sec. 5859; Nichols v. Ins. Co., 176 Mo. 355; Epperson v. Ins. Co., 90 Mo. App. 432; Price v. Ins. Co., 48 Mo. App. 281; Cravens v. Ins. Co., 148 Mo. 583; Horton v. Ins. Co., 151 Mo. 604; Smith v. Ins. Co., 173 Mo. 340. (2) This policy is governed by the statutes in force at the time of its issue, 1896. Smith v. Ins. Co., 173 Mo. 329; Burridge v. Ins. Co., 210 Mo. 158. (3) The provisions of Laws 1895, page 197, and R. S. 1889, Section 5856, entered into and became a part of the policy sued on in this case, and under said policy, plaintiff was entitled to paid-up insurance as prescribed by said law. Nichols v. Ins. Co., 176 Mo. 355; Epperson v. Ins. Co., 90 Mo. App. 432. (4) The amendment of Sec. 5859, R. S. 1889, by Laws 1895, page 197, did not repeal Section 5856, 5857, or 5858, R. S. 1889, but if it had done so, it would not have been in violation of Sec. 28, Art. 4, Mo. Constitution. State v. Doerring, 194 Mo. 398; State v. Heege, 135 Mo. 112; State ex rel. Dickerson v. County Court, 128 Mo. 427; O'Brien v. Ash, 169 Mo. 283; Barnes v. Pickey, 269 Mo. 403. (5) Neither the statute nor the judgment infringes any of the provisions of the Fourteenth Amendment. The policy properly construed gives no duplication of remedies.

BLAIR, P. J.—This is an appeal from a judgment for the beneficiary in a twenty-year endowment policy of insurance for $5000 on the life of W. C. H. McPike. The policy was delivered October 13, 1896. Three annual premiums were paid. Insured defaulted in the payments due September 25, 1899, and thereafter, and died November 26, 1911. Appellant is a New York corporation, and was licensed to do business in Missouri. McPike was a citizen of this State.

When the policy was issued the laws of New York provided that after any policy had been in force for three full years and default was made in payment of premiums thereafter, the reserve should, on demand made, with surrender of the policy within six months, be taken as a single premium at the company's published rates, and applied, as agreed in the application or policy, either to purchase extended insurance for the amount of the policy or paid-up insurance in such amount as the reserve would purchase; that if no agreement appeared in the application or policy, then the "owner of the policy" might exercise his option on demand within six months. The law admitted to be then in force is Sec. 88, Art. II, Chap. 690, Laws of New York of 1892, as set out in full in Nichols v. Ins. Co. 176 Mo. l. c. 364, 365. The policy in suit contained the following agreement:

"This policy cannot be forfeited after it shall have been in force three full years as hereinafter provided:

"First. If any subsequent premium is not duly paid this policy will be endorsed for the amount of paid-up insurance specified in the table on the preceding page, less the value of any indebtedness on this policy, provided demand is made therefor with surrender of this policy within six months after such non-payment—such paid-up insurance being payable either if the insured shall die before the 25th day of September, 1916, or if the insured then be living—or,

"Second. If any subsequent premium is not duly paid, and if this policy is not surrendered as provided

in the preceding clause, the insurance under this policy will, after the repayment of any indebtedness, be extended without request or demand therefor, for the amount of five thousand dollars, during the term provided in the table on the preceding page, payable only if the insured dies within said term. At the end of said term the insurance shall cease, and the amount provided in the last column in said table will become payable if the insured is then living.

"Third. The insurance provided for in the two preceding clauses shall be based upon completed insurance years only, and shall be subject to the conditions of this policy, but without further payment of premiums and without loans or participation in surplus."

The amount of the available reserve under this policy was, in fact, somewhat less than it would have been if computed under the laws of this State then in force. Nevertheless, though so computed, the resultant sum would not have carried the policy to the time of McPike's death. No demand for a paid-up policy was made, and there was no communication with the company after McPike's death in 1911 until in July, 1913. The first petition in this case was drawn upon the theory that the policy was kept in force by the non-forfeiture laws of this State until McPike's death. The amended petition, on which the case was tried, proceeds upon the theory that upon default in payment of the fourth annual premium the reserve on the policy was automatically converted, without demand, into paid-up insurance for the sum of $1630.80. It was this sum, with interest, for which respondent had judgment.

The law in force when the policy was issued controls (Liebing v. Ins. Co., 269 Mo. l. c. 521) and must govern in this case. Sections 5856, 5857, 5858 and 5859 (as amended in 1895, Laws 1895, pp. 197, 198), Revised Statutes 1889, were then in force. Section 5856 provided that no policy of life insurance, after two premium payments, should be forfeited for non-payment of additional premiums, but that it should be commuted into

extended insurance, proportioned to the net value of the policy, less authorized deductions, if any. Section 5857 provided that after the payment of two annual premiums and default, the legal holder of the policy might, within sixty days from the beginning of the extended insurance period, as provided in Section 5856, demand a paid-up policy, which must be issued, of the value prescribed by the section. Section 5858 prescribes the rule of payment on commuted policies. Section 5859, as amended in 1895, reads as follows:

"The three preceding sections shall not be applicable in the following cases, to-wit: *If the policy shall have been issued by any company authorized to do business in this State, and organized under the laws of another state of the United States which prescribes a surrender value or paid-up or temporary insurance in case of default in payment of premiums, and shall contain an agreement for such surrender value, temporary or paid-up insurance, as prescribed by such other state as a part of said policy, or* if the policy shall contain a provision for an unconditional cash surrender value at least equal to the net single premium for the temporary insurance provided hereinbefore, or for the unconditional commutation of the policy for non-forfeitable paid-up insurance, or if the legal holder of the policy shall, within sixty days after default of premium, surrender the policy and accept from the company another form of policy, or if the policy shall be surrendered to the company for a consideration adequate in the judgment of the legal holder thereof, then, and in any of the foregoing cases, this act shall not be applicable: *Provided that in no instance shall a policy be forfeited for non-payment of premiums after the payment of three annual premiums thereon; but in all instances where three annual premiums shall have been paid on a policy of insurance the holder of such policy shall be entitled to paid-up insurance, the net value of which shall be equal to that provided for in Section 5856 of this article.*"

The italics indicate parts added in 1895. By the same act a clause was eliminated. In Section 5859, Revised Statutes 1889, prior to 1895, the clause relating to paid-up insurance read: "or for the unconditional commutation of the policy to non-forfeitable paid-up insurance, *for which the net value shall be equal to that provided for in Section 5857.*" In the Act of 1895 the last italicized clause was omitted.

It will be observed that Section 5859, Revised Statutes 1889, as it stood before the amendment in 1895, exempted policies from the operation of Sections 5856, 5857, and 5858, Revised Statutes 1889, only when such policies contained (1) provision for an unconditional cash-surrender value at least equal to the net single premium for the temporary insurance "provided hereinbefore," *or* (2) for the unconditional commutation of the policy to non-forfeitable paid-up insurance "for which the net value shall be equal to that provided for in Section 5857," *or* (3) if the legal holder, within sixty days after default, exchanged the policy for another, *or* (4) if the legal holder surrendered the policy for a consideration he deemed adequate. The amendment of 1895 made three changes. The first consisted of a provision which on its face, if considered without reference to the proviso also added, would have had the effect of rendering Sections 5856, 5857 and 5858 inapplicable in the case of any policy issued by any company of another state whose laws prescribed (1) "a surrender value *or* (2) paid-up *or* (3) temporary insurance in case of default in payment of premiums" and which policy contained "an agreement for such surrender value, temporary *or* paid-up insurance as prescribed by such other state as a part of said policy." Prior to this amendment the company and the insured could not avoid the effect of Sections 5856, 5857 and 5858, Revised Statutes 1889, by agreeing to substitute the reserve values fixed by the laws of the state of the company's origin. By this amendment, unless the proviso is held to qualify it very materially, they were per-

2—280 Mo.

mitted, under stated conditions, to agree in the policy to abide the non-forfeiture laws of the company's state. Respondent concedes the policy agreement conformed to the laws of New York, but contends the proviso in the Act of 1895 automatically, upon default in 1899, converted the policy in suit into paid-up insurance "the net value of which" was equal to that provided in Section 5856, Revised Statutes 1889, i. e. $1630.80.

We understand respondent's position to be that Section 5859, Revised Statutes 1889, as amended in 1895, governs this case, but that since the policy did not provide for unconditional paid-up insurance and did not provide for temporary insurance of the value prescribed by Section 5856, Revised Statutes 1889, therefore the proviso in the Act of 1895 automatically converted the policy into paid-up insurance of the net value prescribed in Section 5856. In other words, respondent's contention is that in every foreign policy issued while the Act of 1895 was in force, which policy did not provide for temporary or paid-up isurance of a value equal to that under our law, though the law of the company's state authorizes such value, the proviso in that act, in case of default as therein provided, automatically transformed such policy into paid-up insurance of the net value prescribed in Section 5856, Revised Statutes 1889.

The whole burden of this contention rests, in the last analysis, upon the word "entitled" as it appears in the proviso in question. The word is susceptible of more than one meaning. It might be used to mean that "a right or title" is given is vested; or it might mean that one is "furnished with grounds for seeking or claiming with success." [Webster's New International Dict.; Reed v. Bank, 29 Grat. 1. c. 723, 724; English's Ex'r. v. McNair's Adm'rs., 34 Ala. 1. c. 48, 49; Robertson v. Railroad, 63 N. H. 1. c. 548; Hibberd v. Slack, 84 Fed. 1. c. 579.] In determining the meaning to be given to the word in this case it is desirable to examine the effect produced by an acceptance of respondent's interpretation. It has been already decided that the

proviso "applies to all policies, whether foreign or local." [Nichols v. Ins. Co., 176 Mo. 1. c. 375, citing Epperson v. Ins. Co., 90 Mo. App. 436.] If respondent's contention be sustained, then every policy, foreign or local, which falls within the Act of 1895, after payment of three premiums and default thereafter, must necessarily be converted by the proviso into paid-up insurance of the prescribed value. It would make no difference what the laws of the foreign State prescribed, nor what agreement the policy contained, whether the contract value was greater or less than that of our laws. The language of the proviso contains no exceptions. It would apply even in case the holder surrendered the policy and accepted another or accepted some other consideration adequate in his judgment. He might contract in his policy for temporary insurance in accordance with the laws of another State and the policy might provide for the stated cash surrender value. None of these would avail, since, so construed, the proviso would step in in every case under the act and convert the reserve into paid-up insurance without regard to what the parties had agreed or had done by way of settlement after default. If the proviso be so construed, the preceding provisions of the amended section could be construed only as defining the classes of policies which would be, by default, transformed by the act into paid-up insurance. The holding of this court that the first amendment added by the Act of 1895 authorized the parties to contract with respect to the non-forfeiture laws of the state of the company's origin is obviously unsound of the proviso is to be construed as respondent contends. Such contract, in that event, would be denied all force as a contract and applied simply to catalogue policies to be governed by the proviso. Further, it is not reasonable to say the Legislature intended to convert into paid-up insurance a reserve which the parties had converted by agreement after default into a policy of another kind, or which the holder had adjusted with the company for a consideration he deemed adequate.

Nor could any company be induced to issue another policy or pay a consideration in adjustment of a reserve already converted by the statute into paid-up insurance and liability thereunder already fixed by the proviso. Further considerations arise out of a study of the present statute (Sec. 6949, R. S. 1909) wherein the proviso is as it was save that it provides that the holder "shall be entitled to paid-up *or* extended insurance" in case of default after three payments.

We are of the opinion that respondent's position is untenable. It seems probable that the Legislature meant by the proviso that in cases to which the act applied, the holder, in the designated cases, should have the right to claim or demand paid-up insurance of the value fixed by the proviso, if he desired to do so, in any case in which he had contracted otherwise in his policy and concluded he preferred the statutory rather than the purely contract right, the proviso being a part of his contract. It entitled him to claim such paid-up insurance, but did not require him to accept it whether he would or no. There may be other reasonable constructions. Some are suggested. It is not necessary to decide between them in this case. By none of these is the judgment authorized. The insured had the full benefit of his policy agreement; and had he died during the period of temporary insurance, his beneficiary could have collected the face of the policy. He did not die until after the expiration of that period.

The judgment is reversed. All concur except *Goode, J.,* not sitting.