GEORGE HEURING, APPELLANT, v. CENTRAL STATES LIFE INSURANCE COMPANY OF ST. LOUIS, MISSOURI, A CORPORATION, RESPONDENT. —87 S. W. (2d) 661.

Springfield Court of Appeals.    October 7, 1935.

Rehearing denied, November 27, 1935.

*B. Hugh Smith* and *J. Grant Frye* for appellant.

*Ward & Reeves* and *Jones, Hocker, Gladney & Jones* for respondent.

44

SMITH, J.—This is an action on a life insurance policy. The petition is formal and need not be set out here. It alleged that on August 10, 1928, in consideration of an annual premium of $22.43, payable each year for twenty years, defendant issued its policy for one thousand dollars on the life of Amelia Louisa Heuring, then twelve years of age, and that her father, the plaintiff, was beneficiary; that while the policy was in force, the insured died October 20, 1933. Suit was for the full amount of one thousand dollars, and for ten per cent of that amount as damages for vexatious refusal to pay and for a reasonable attorney fee and for costs.

The answer admitted its corporate existence in Missouri, admitted the issuance of the policy in question, the payment of certain premiums thereon, and admitted the death of the insured on the date alleged in the petition, but denied liability under the policy. The defendant then pleaded a special defense, which we quote in full, as follows:

"And for further answer and defense to plaintiff's petition, the defendant alleges that said policy was issued in consideration of the payment in advance of the sum of $22.43, which was the premium for term insurance ending on August 10, 1929, and of the payment of a like amount on or before the 10th day of August in every year during the continuance of said policy, until premiums for twenty (20) years from the date of said policy should have been paid thereon; alleges that the application for said policy, a copy of which is attached to and by the terms of said policy is made a part thereof, was made by the plaintiff herein, and in said application the plaintiff requested that the policy so applied for should contain what was known as the 'Special Automatic Loan Privilege' and that pursuant to said request, said policy contained an automatic loan privilege in which it was provided as follows:

" 'Any premium due thereon after three full years' premiums have been paid and which remains unpaid on the last day of grace will be advanced by the company as a loan against this policy if written request from the insured has been received at the Home Office when application is made for this policy or while this policy is in force without further action by the insured and provided the cash value of the policy at the end of the period which such advanced premium will cover is at least equal to the amount of such premium and interest thereon, together with any outstanding indebtedness hereon

to the company. Subsequent premiums will be advanced from time to time as they fall due under like conditions. Any indebtedness thus created will be a first charge against the policy ranking in priority to the claim of any beneficiary or assignee. If the cash value or balance thereof be not sufficient to pay an entire premium and interest it shall be used to pay a semi-annual or quarterly premium if sufficient to do so.'

"Alleges that it was further provided in and by the terms of said policy that if any premium was not paid when due, said policy should cease and determine, except as otherwise provided therein; alleges that the plaintiff paid the first three annual premiums on said policy in cash; that for the fourth premium due under said policy on the 10th day of August, 1931, plaintiff executed and delivered to the defendant his premium lien note, verified copy of which, marked 'Exhibit A,' is hereto attached and made a part thereof, for the sum of $23.86, which included the amount of the annual premium of $22.43 due under said policy on August 10, 1931, and interest in advance on said amount from August 10, 1931, to August 10, 1932, the due date of said note, amounting to $1.43, and in said note it was stipulated and agreed that if not paid said note would be automatically extended from year to year as long as premiums on said policy were duly paid; that if any premium on said policy was not paid when due, said note and accumulated interest should immediately become due and payable, and should, without notice of any kind, be paid by deducting the amount due thereon from the sum which by the term of said policy was applicable to the purchase of insurance in the event of nonpayment of the premium when due, the balance only of said sum, if any, to be available for the purchase of insurance under and pursuant to the nonforfeiture provisions of said policy; alleges that neither the plaintiff nor the insured, nor anyone on their behalf, either on or prior to August 10, 1932, or within thirty-one days thereafter, the period of grace allowed by the policy for the payment of premiums, paid or tendered to the defendant the fifth premium of $22.43 which became due under said policy on August 10, 1932; that on the 10th day of August, 1932, the cash value of said policy was insufficient to pay the full premium of $22.43 due under said policy on August 10, 1932, in accordance with the automatic premium loan clause of said policy after deducting 'Exhibit A' hereto, which had not previously been paid, and interest thereon, and thereupon the defendant, in accordance with the automatic premium loan clause of said policy, applied the cash value of said policy to pay the semiannual portion or part of the fifth premium on said policy from August 10, 1932, to February 10, 1933, amounting to the sum of $11.66 with interest, and as a result, the outstanding indebtedness against said policy on August 10, 1932, was increased to $37.79 which was made us as following:

(1) Premium lien note, 'Exhibit A' hereto..........$23.86
(2) Semiannual Premium (Aug. 10, '32-Feb. 10, '33). 11.66
(3) Interest on (1) and (2) to Aug. 10, 1933........ 2.27

$37.79

alleges that neither the plaintiff nor the insured, nor anyone on their behalf paid or tendered to the defendant on or prior to February 10, 1933, or within thirty-one days thereafter, the semi annual premium of $11.66 due under said policy on February 10, 1933, or made any payment on account of the outstanding premium lien note marked 'Exhibit A' hereto, or on account of the semi annual premium of $11.66 charged against said policy for the period from August 10, 1932, to February 10, 1933, under the automatic premium loan clause of said policy; that on February 10, 1933, the cash value of said policy was insufficient to pay the semi annual premium of $11.66 under said policy for the period from February 10, 1933, to August 10, 1933, after deducting the outstanding premium lien note marked 'Exhibit A' hereto and the semi annual premium of $11.66 for the period from August 10, 1932 to February 10, 1933, which was charged against the cash value of said policy under the automatic premium loan clause of said policy as aforesaid, and thereupon the defendant, in accordance with the automatic premium loan clause of said policy, applied the cash value of said policy to pay a quarterly premium on said policy from February 10, 1933, to May 10, 1933, amounting to the sum of $5.94, and as a result the outstanding indebtedness on said policy was increased to the sum of $43.25; alleges that neither the plaintiff nor the insured, nor anyone on their behalf paid or tendered to the defendant on or prior to May 10, 1933, or within thirty-one days thereafter the quarterly premium of $5.94 which became due under said policy on May 10, 1933, nor made any payment of or on account of the indebtedness of $43.25 outstanding against said policy on May 10, 1933, as aforesaid; that on May 10, 1933, the cash value of said policy amounted to the sum of $44.25; that after deducting the indebtedness of $43.25 outstanding against said policy on May 10, 1933, from the cash value of said policy on May 10, 1933, as aforesaid, there was a balance of one dollar ($1.00) which was insufficient to pay the quarterly premium of $5.94 on said policy from May 10, 1933, to August 10, 1933, and thereupon and in accordance with the provisions of said policy, the said sum of one dollar ($1.00) was applied to continue said policy in force as extended insurance for a period of forty-nine days from May 10, 1933, on to June 27, 1933, and that since the insured died on October 20, 1933, said policy was not in force at the time of insured's death and there is no liability on the part of the defendant under said policy. "Wherefore, having fully answered, defendant prays to be dismissed with its costs."

Thereafter the plaintiff filed a reply which, caption and signature omitted is as follows:

"Now comes the plaintiff and for reply to defendant's answer filed herein admits that said policy was issued in consideration of the payment in advance of the sum of twenty-two and 43/100 ($22.43) dollars, which was the premium for term insurance ending on August 10, 1929, and of the payment of a like amount on or before the 10th day of August in every year during the continuance of said policy, until premiums for twenty years from the date of said policy should have been paid thereon; admits that in the application made by plaintiff a request was made that the policy contain the 'Special Automatic Loan Privilege' and that said policy did contain the privilege set out in defendant's answer; admits that it was further provided in and by the terms of said policy that if any premium was not paid when due, said policy should cease and determine except as otherwise provided therein; admits that the plaintiff paid the first three annual premiums on said policy in cash; admits the execution of the premium lien note of defendant under date of August 10, 1931, for the sum of twenty-three and 86/100 ($23.86) dollars; denies that the cash value of said policy on August 10, 1932, was insufficient to pay the premium due on said date together with the outstanding premium lien note; denies that the cash value of said policy on February 10, 1933, was insufficient to pay the outstanding indebtedness on said policy; denies that the cash value of said policy on May 10, 1933, was insufficient to pay the outstanding indebtedness on said policy; denies that said policy expired on June 27, 1933.

"Further replying plaintiff alleges that said policy by its terms provided for extended insurance for the face amount thereof for the insured up to and beyond October 20, 1933, the date of the death of the insured.

"And for another and further reply, plaintiff alleges that under the automatic premium loan provisions of said policy it remained in full force and effect for the face amount thereof—after the payment of three annual premiums—until such time as the defaulted premiums, together with interest thereon, equalled the cash surrender value of said policy and thereafter until the defendant mailed a notice to the insured thirty days prior to the time the indebtedness on said policy equalled the cash surrender value of said policy, notifying the insured that at the expiration of said thirty days said policy would expire and be cancelled and be of no force and effect, because the said indebtedness on said policy had absorbed the cash surrender value of said policy and plaintiff says that defendant failed to mail any such notice to the insured.

"Plaintiff says that by reason of the wilful, intentional, and wrongful misconduct of the defendant in failing to mail said notice to the insured, this plaintiff to his injury, damage, and prejudice was

misled and lulled into the security of relying on said policy being in full force and effect, and plaintiff says that because of the aforesaid wrongful misconduct on the part of the defendant in wilfully and intentionally failing to mail said notice the defendant is now estopped to claim that by reason of the automatic premium loan provision, said policy expired on June 27, 1933, and plaintiff says that expiration and cancellation of said policy on June 27, 1933, were waived by the defendant and said policy was in full force and effect on October 20, 1933, the date of the death of said Amelia Louisa Heuring.

"Wherefore, plaintiff asks judgment as prayed in his petition."

The cause came on for trial August 20, 1934, before the court and a jury. At the close of all the evidence the submission to the jury was set aside and the cause submitted to the court, and was by the court taken under advisement until November 20, 1934, when the issues were found against the plaintiff and in favor of the defendant, and the court entered of record his finding of facts as follows:

"The court finds the facts to be that a policy was issued August 10, 1928, by Central States Life Insurance Company, the defendant, on the life of Amelia Louisa Heuring, the premium of which is $22.43 a year, on a 20 Payment Life Non-participating Policy. That the insured was born on the 9th day of August, 1916, and that she died October 20, 1933. The court finds that the premium of $22.43 was paid August 10, 1928, August 10, 1929, and August 10, 1930; that the premium due August 10, 1931, was settled for by the insured, or her father for her, giving a note to defendant for $23.86, which became due August 10, 1932; that on August 10, 1932, this note was not paid, neither was an additional premium of $22.43 paid. The court finds that the cash value of the policy on August 10, 1932, was $33.00, and according to the terms of the note, the defendant was entitled to have the note deducted from the cash surrender value of the policy on that date, which left a balance due of $9.14. The court finds that there is no testimony in the record to show that this balance of $9.14 would carry the insurance policy and keep it in force beyond the period of the death of the insured, to-wit, October 20, 1933, and that before the death the policy lapsed under any of the terms of settlement shown in this case. Counsel for plaintiff insists that the policy was kept in force because the defendant failed to give the thirty day notice called for under the cash loan provision of the policy, but the court finds that that notice is not applicable for the reason there were no cash loans negotiated on this policy, and finds no such notice was given and no such notice was required."

Motion for new trial was filed and overruled, and the appeal was had to this court.

There is practically no controversy here over the facts. The contention is over the construction of certain paragraphs and provisions

in the policy of insurance. The defendant contends that under the terms of the policy, and especially under the clause of the policy providing for the *Special Automatic Loan Privilege* (which clause is quoted in defendant's answer above), the policy had expired before the date of the death of the insured. The defendant contends that this privilege was requested in the application for insurance. Defendant introduced in evidence the application for the insurance. That part of the application referring to the loan privilege is as follows:

"APPLICATION FOR LIFE INSURANCE

1 A Full name of original beneficiary.
George Heuring.

2 A Residence of original beneficiary.
Illmo, Mo.

4 A Full name of the child.
Amelia Louisa Heuring.

5 A Date of birth of the child.
Aug. 9, 1916.

6 A The original beneficiary.............. requests the Special Automatic Loan Privilege. (Insert 'does not' if this privilege is not wanted.)

7 B Amount of insurance. $1000.00.

8 Kind of policy. 20 Pay Life with waiver benefit insurance.

9 Annual Premium. $22.43.

Dated, Illmo this 6th day of Aug., 1929.

GEORGE HEURING.
(Original beneficiary's own signature in full)"

The plaintiff does not deny that such a request was in the application, nor that such a clause with reference to the special premium loan privilege was in the policy, but plaintiff contends that the provision of the special premium loan privilege is in direct conflict with another provision of the policy which provides for automatic extended insurance upon default of payment of premium. The provision of the policy that the plaintiff has reference to, in contending that there is a conflict, is as follows:

"SURRENDER VALUES: After three full years' premiums have been paid the insured may at the end of any policy year, or within thirty-one days after the due date of any premium in default, surrender the policy and receive one of the following OPTIONS:

"(1) Extended Insurance, Automatic: To have the insurance for the face amount hereof continue as non-participating Term Insurance reckoned from the due date of the unpaid premium, or

"(2) Paid-up Life Insurance: To surrender this policy for a paid-up policy, or

"(3) Cash Value: To receive the cash surrender value.

"If the insured shall not within the thirty-one days of grace make written request accompanied by this policy that it be endorsed for paid-up insurance as provided in Option (2) or that it be surrendered for the cash value as provided in Option (3) the insurance will be automatically continued as provided in Option (1).

"CASH LOANS: The company will loan on the sole security of this policy, properly assigned, any sum desired, provided the total indebtedness hereon shall not exceed the cash surrender value. Such loan may be made at any time after three full years' premiums have been paid out before default in the payment of premium and any unpaid premiums for the policy year in which the loan is made and interest at six per cent per annum in advance to the end of such policy year must be paid in cash or will be deducted from the proceeds of the loan. Interest at the aforesaid rate will be payable annually in advance thereafter and if not paid when due will be added to the principal.

"All or any part of the indebtedness hereon may be repaid at any time before default in the payment of a premium. Failure to repay such indebtedness or to pay interest thereon shall not void the policy but whenever the total indebtedness hereon equals the cash surrender value, the policy shall become void one month after the company shall have mailed notice to the last known address of the insured and any assignee of record.

"TABLE OF SURRENDER AND LOAN VALUES: Values shown in the following table are available if premiums have been paid in full for the number of years stated and if there is no indebtedness hereon; the surrender values will be adjusted proportionately for semi annual or quarterly premiums paid in addition to the premiums for complete policy years:

| After Policy has been in force | Paid-up Ins. | Extended Yrs. | Ins. Mos. | Cash Surrender or Loan Value |
|---|---|---|---|---|
| 3 years | $ 71 | 2 | 8 | $19 |
| 4 years | 122 | 4 | 9 | 33 |
| 5 years | 176 | 7 | 2 | 48 |
| 6 years | 231 | 10 | 0 | 64 |

"The company will at any time allow a cash surrender value on any Paid-up Term or Paid-up Life Insurance granted under Surrender Value Option (1) or (2) equal to the reserve thereon and will loan on security of such Paid-up Life Insurance any amount within the cash surrender value thereof.

"RESERVE: The reserve on the Life Insurance Benefit of this policy shall be computed on the American Experience Table of Mortality with interest at the rate of $3\frac{1}{2}$ per cent per annum and after the twentieth year the surrender and loan values will be equal to the full reserve aforesaid."

The evidence showed conclusively certain facts, about which there is no controversy, as follows: that a policy was issued August 10, 1928, by the defendant, on the life of Amelia Louisa Heuring, the premium of which is $22.43 a year, on a 20 payment life non-participating policy; that the insured was born on the 9th day of August, 1916, and that she died October 20, 1933; that the premium of $22.43 was paid August 10, 1928, August 10, 1929, and August 10, 1930; that the premium due August 10, 1931, was settled for by the insured, or her father for her, giving a note to defendant for $23.86 which became due August 10, 1932; that on August 10, 1932, this note was not paid, neither was an additional premium of $22.43 paid; that the cash value of the policy on August 10, 1932, was $33.

It is the contention of the plaintiff that when the note which was due on August 10, 1932 was not paid and the annual premium which was due on that date was not paid, that according to the terms of the note, as well as the policy, the defendant was entitled to deduct from the cash surrender value of the policy on that date, $33, the amount of the note or indebtedness against the policy, $23.86, which left a balance of $9.14 of the cash surrender value, and that the plaintiff was entitled to have that $9.14 applied to pay extended insurance, and if applied that way it would extend the policy for 447.86 days, or until November 2, 1933, which was twelve days after the insured died.

The defendant contends that under the Special Automatic Loan Privilege, which was requested in the application for insurance, this cash surrender value was applied in a different manner. Defendant concedes that three annual payments were in cash, and contends that the fourth premium due August 10, 1931, the insured gave a premium lien note for $23.86, which included interest of $1.43 from August 10, 1931, to August 10, 1932; the fifth premium due August 10, 1932, was not paid, and as the reserve or cash value of the policy on that date was not sufficient, after deducting the outstanding lien note or indebtedness to pay the full premium, it was applied in accordance with the automatic premium loan clause of the policy to pay a semi-annual premium of $11.66 from August 10, 1932, to February 10, 1933; the semi-annual premium of $11.66, due February 10, 1933, not having been paid, and the reserve or cash value of the policy being insufficient, after deducting the outstanding indebtedness, to pay that premium, the defendant applied the same to the payment of a quarterly premium of $5.94 from February 10, 1933, to May 10, 1933; the insured failed to pay the quarterly premium of $5.94 due May 10, 1933; on that date the excess of the reserve or cash value of the policy over the outstanding indebtedness was $1. As this amount was insufficient to pay the quarterly premium of $5.94 due May 10, 1933, the defendant, under the terms of the policy, was required to apply the same to continue the policy in force as

extended insurance; that this sum of $1, on May 10, 1933, applied to the purchase of extended insurance, continued the policy in force as extended insurance on the policy table, the American Experience Table of Mortality with three and one-half per cent interest per annum, for a period of forty-nine days from May 10, 1933, or to June 28, 1933; on the Actuaries or Combined Table of Mortality with four per cent interest (the Statutory Table), this sum of $1 would continue the policy in force as extended insurance for a period of fifty-four days from May 10, 1933, or to July 3, 1933; the insured died on October 20, 1933, and consequently this period of extended insurance expired prior to her death.

So narrowed down the final question is, when did this policy expire?

A reference to the trial court's finding of facts shows this, ''The court finds that there is no testimony in the record to show that this balance of $9.14 would carry the insurance policy and keep it in force beyond the period of the death of the insured, to-wit, October 20, 1933, and that before the death the policy lapsed under any of the terms of settlement shown in this case.''

The plaintiff contends that the $9.14 is the difference between the amount of the loan of premium note and the cash surrender value of the policy on the date the note became due and was not paid. It seems that the trial court found that $9.14 is the difference, but the court also found ''that there is no testimony that this balance of $9.14 would carry the insurance policy and keep it in force beyond the period of the death of the insured, to-wit, October 20, 1933, and that before the terms of settlement shown in the case.''

We are not able to agree with the finding of the trial court as to the lack of evidence as to the time of extended insurance $9.14 would pay. Under the policy of insurance, which was in evidence, under the *Table of Surrender and Loan Values*, which we have quoted above, it is provided that after the policy has been in force three years it would have extended insurance for two years and eight months, and after it had been in force for four years it would have extended insurance for four years and nine months, or $33 cash surrender or loan value. It is but a matter of calculation, if $33 was equivalent to four years and nine months extended insurance, $9.14 would buy extended insurance for 479 days, or until after the date of the insured's death. Figuring the evidence under the provision of the policy as to extended insurance, there is no question but that the extended insurance, if that provision had been applied, would extend beyond and after the date of the death of the insured.

But under the express provision of the application for the insurance, made by the beneficiary himself, he did not contract for the provision for extended insurance. A reference to his application, quoted above, shows that ''The original beneficiary requests the *Special Automatic Loan Privilege*'' and the policy was issued, ac-

cording to the uncontradicted evidence, under the Special Automatic Loan Privilege clause and it seems to be conceded by the plaintiff, that if that loan privilege is to prevail the policy had expired before the death of the insured.

The courts of this State and others have passed on this very question, and have held that there is nothing to prohibit an applicant to make application for and contract for the kind of insurance he wants. In other words, no court so far as we have been able to ascertain, has ever held that the insured, or the beneficiary, as in this case, could not contract with the insurance company for the Special Automatic Loan Privilege. It is not our province in a case of this kind to say which was the better option under the surrender values at the time the contract was made, nor was it the province of the trial court. The beneficiary, the plaintiff, requested the Special Automatic Loan Privilege. He had a right to request such a privilege. The courts hold and we hold that such a request was within his rights, and the facts that the extended insurance provision was within the policy does not preclude the insured, or the beneficiary as in this case, from making other and different terms of settlement. [Cooper v. New York Life Ins. Co. (Mo. Sup.), 211 S. W. 548, 550; Alford v. New York Life Ins. Co., 280 Mo. 11, 216 S. W. 754; Mass. Mut. Life Ins. Co. v. Jones, 44 Fed. (2d) 540.]

It seems under this policy that under the Automatic Premium Loan Privilege, which the beneficiary requested in his application, the policy had lapsed before the death of the insured. The plaintiff practically concedes this, but contends here that since the extended insurance provision of the policy would have extended this insurance, beyond the date of death of the insured, and since the provision of ''Special Premium Loan Privilege'' is in direct conflict therewith, because under that provision of the policy the policy expired before the date of death of insured, then the court should declare that the extended insurance provision is more favorable to the insured and should prevail.

We cannot reach the conclusion that such a contention is logical in view of the fact that the plaintiff, the beneficiary, contracted for the Special Premium Loan Privilege. Nor could we absolutely say that the extended insurance provision was the better plan. There are reasons that might be given as to why the Special Premium Loan Privilege would be better for the insured. Under the provisions of the policy when the reserve is applied to the purchase of extended insurance, the primary insurance terminates, and cannot thereafter be restored unless the company consents to its reinstatement. Under that provision the secondary or extended insurance which will expire at the end of the term is all that the insured can have. Under the Special Premium Loan Privilege the insured may have the reserve automatically used to pay the premium which will keep the primary

insurance in force. We can see where that might be a great benefit, for it might and likely would be of importance to keep the primary insurance in force. The insured, or the beneficiary as in this case, might very much prefer to use his reserve to keep the primary insurance in force, for when the next premium became due, he might be able to pay it, and thus continue to keep his primary insurance in force. It is not necessary for us to determine which of these plans was better at the time the matter was determined, which in this case was when the application was made. It is our conclusion that the interested parties had a right to make such a contract as they wished, and in this instance the Special Premium Loan Privilege was selected, and we think under our statutes it was a legal contract.

The plaintiff contends that "The so-called 'Special Premium Loan Privilege' provision cannot defeat the policy unless a thirty-day notice is sent to insured notifying him that the indebtedness on the policy equals the cash surrender value.." The contention is that no thirty days' notice was given, therefore the failure to give the notice continued the policy in force. There is no merit to this contention. Under the Special Premium Loan Privilege when the premiums were not paid by the insured remitting to the company the insurance company then took the reserve and paid the premium. The record in this case shows that this was done in August, 1932; the semi annual premium was due February 10, 1933. There was not sufficient funds to pay another semi annual premium, and a quarterly premium was paid out of the reserve which carried the insurance to May 10, 1933. There was only $1 of the indebtedness left at that time, and that was not sufficient to carry the insurance up to the date of the insured's death and the policy was lapsed. That was in accordance with the written request of the plaintiff when the application was made for the insurance, and therefore we think the policy lapsed because of the failure to pay the quarterly premium due on May 10, 1933, and there was no occasion to give the thirty days notice as claimed by plaintiff.

It follows that the judgment should be affirmed. It is so ordered. *Allen, P. J.,* and *Bailey, J.,* concur.